**FILED**

**October 16, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 7:15 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Sean Vance East, | ) | Docket No.: 2014-01-0009 |
| Employee, | ) | |
| v. | ) | State File Number: 71607/2014 |
| Heritage Hosiery, | ) | |
| Employer, | ) | Judge Thomas Wyatt |
| And | ) | |
| Employers Preferred Ins. Co., | ) | |
| Insurance Carrier. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING ADDITIONAL MEDICAL AND DISABILITY BENEFITS

---

This claim came before the Court on September 22, 2015, upon a second Request for Expedited Hearing (REH) for medical and temporary disability benefits filed by the employee, Sean Vance East.[1] The employer, Heritage Hosiery, Inc. (Heritage), asked the Court to find Mr. East did not establish by expert medical opinion that his alleged work-related injury arose primarily out of and in the course and scope of employment.[2] For the reasons set forth below, the Court finds the injury is not compensable and denies the requested relief.

### History of Claim

Mr. East is a forty-six-year-old resident of Hamilton County, Tennessee. (T.R. 1 at 1.) He alleged that, on September 4, 2014, he injured his "left arm from neck to hand (numbness, tingling, pain)" while lifting heavy boxes of yarn in the course and scope of

---

[1] Mr. East titled his REH as a Motion for Medical Benefits. The Bureau of Workers' Compensation's Hearing and Mediation Rules allow a party to request an Expedited Hearing by Motion. *See* Tenn. Comp. R. & Regs. 0800-02-21-.02(18) (2015). At the Expedited Hearing, he also asked to present in-person testimony on the issue of his entitlement to temporary partial disability benefits. At the first Expedited Hearing, the Court denied temporary partial disability benefits because it found Mr. East quit his job at Heritage. Because Mr. East asked for temporary disability benefits in the previous Expedited Hearing, at which time he was self-represented, and is now represented by counsel, the Court allowed both parties to introduce testimony on the temporary disability benefits issue.

[2] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

his employment by Heritage.  *Id.*  Mr. East worked at Heritage for approximately one week when the alleged injury occurred.

*First Expedited Hearing*

On November 13, 2014, the Court conducted a telephonic Expedited Hearing, following which it ordered Heritage to provide medical benefits.  (T.R. 3 at 1, 7.) Heritage complied by authorizing orthopedic surgeon Dr. Peter Lund to treat Mr. East's alleged injury.  The Court also found Mr. East was not entitled to temporary disability benefits because he quit his job at Heritage.

*Second Expedited Hearing*

*Termination of Employment*

The testimony concerning whether Mr. East quit his job at Heritage or Heritage terminated him differed little from the telephonic testimony introduced at the previous telephonic hearing.  Mr. East testified that, on September 9, 2014, he communicated to Heritage's plant manager, Forrest Martin, his concern that the heavy lifting his job required might cause him to reinjure two surgically-repaired hernias.  Mr. East testified he decided to speak to Mr. Martin after he lifted several heavy boxes of rubber yarn.

Mr. East stated Mr. Martin told him his job required heavy lifting, to which Mr. East responded that he did not want to hurt himself.  Mr. East testified Mr. Martin told him it would be best that he go home, and he interpreted this comment to mean Mr. Martin terminated him.  He testified he did not resign his job and intended to continue working at Heritage if he could.  In support of the latter statement, Mr. East stated he asked Mr. Martin the day after the alleged work-related injury occurred if he could transfer to a job in Heritage's warehouse.

Mr. Martin testified that Mr. East told him he was concerned the required heavy lifting would reinjure his hernias.  He stated Mr. East twice asked him what he should do. Mr. Martin testified he told Mr. East on both occasions that he did not want him to get hurt and he should do what was best for him and his health.  Mr. Martin testified Mr. East then asked what he should do about his time card/key and left the building.  Mr. Martin interpreted Mr. East's comments and actions to indicate he quit his job.

David Fry testified that he was Mr. East's direct supervisor at Heritage.  He stated Mr. East told him on the last day he worked that he believed the lifting required by his job was too heavy for a person with two hernias to perform.  Mr. Fry testified that, shortly after he helped Mr. East stack several boxes of yarn, Mr. East spoke to Mr. Martin and, upon returning, announced he was leaving because he could not handle the heavy lifting.  Mr. Fry introduced into evidence the written time record he kept on

September 4, 2014, on which he wrote that Mr. East "left around 2:00 pm said he quit too much heavy lifting." (Ex. 7.)

*Causation*

Mr. East first saw Dr. Lund on October 20, 2014. (Ex. 1 at 1.) Dr. Lund noted Mr. East reported left-shoulder pain, with numbness and tingling from the bicep area into his left hand "since lifting rubber yarn at previous job." (Ex. 1 at 3.) He later noted Mr. East reported the boxes of yarn he lifted weighed "between 80 and 100 pounds." (Ex. 1 at 3.) Dr. Lund also noted that, "[t]here seems to be a temporal relationship between the onset of these symptoms and his work injury." (Ex. 1 at 4, 19-20.)

Dr. Lund's January 12, 2015 note referenced an MRI of Mr. East's cervical spine that "revealed an abnormality that the radiologist felt could be creating left arm radicular symptoms." (Ex. 1 at 14.) Dr. Lund recommended referral to a spine surgeon for this condition. *Id.* In a February 6, 2015 office note, Dr. Lund indicated a left-shoulder MRI was "suggestive of a labral tear with an apparent cyst at the spinoglenoid notch cyst. His EMG study is suggestive of suprascapular neuropathy." (Ex. 1 at 17.) Dr. Lund opined, "I think *it is possible* that the current MRI findings regarding the labral tearing, spinoglenoid notch cyst formation, are related to his described work injury event." *Id.* (Emphasis added.) Dr. Lund suggested referral to Dr. W. David Bruce, another orthopedic in his office, for further shoulder treatment and to a neurosurgeon for treatment of Mr. East's cervical-spine condition. *Id.*

Dr. Bruce saw Mr. East once. (Ex. 2 at 1.) In response to a letter from Heritage's lawyer soliciting his causation opinion, Dr. Bruce wrote, "to determine with 100% reliability of cause is impossible." *Id.* Dr. Bruce, however, opined that, "[i]t is my feeling that Mr. East had a pre-existing labral pathology[.] This therefore predisposed him to subluxation events with his shoulder and with that subluxation event you can put a traction injury on the suprascapular nerve, which is what I suspect he did." *Id.* Dr. Bruce concluded that "more than 50% I feel was due to his pre-existing condition and not the work he was performing and with that I still think the work contributed but it was to less than 50% and more so the pre-existing labral condition that Mr. East had." (Ex. 2 at 2.)

**Findings of Fact and Conclusions of Law**

*General Legal Principles*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park*

3

*Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

### Termination of Employment

The Court heard no convincing testimony at the in-person Expedited Hearing upon which to set aside the previous ruling that Mr. East quit his job at Heritage. The Court finds that, at a hearing on the merits, Mr. East will not prevail in establishing entitlement to temporary partial disability benefits because he quit his job before he gave Heritage notice of his work-related injury. *See Cotton v. Epsco, Inc.,* No. 01S01-9706-CV-00188, 1998 LEXIS 363, at *13 (Tenn. Workers' Comp. Panel June 24, 1998), holding, "[T]here is no basis for such an award [of temporary total disability benefits] [.] In this case, the plaintiff quit work without advising the defendant that he was unable to work and before the defendant had notice of any injury."[4]

### Causation

To establish compensability under the workers' compensation statutes, an employee must prove that his or her injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). Subsection (B) to section 50-6-102(13) provides, "[a]n injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Section 50-6-102(13)(D) (2014) provides, "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, *as opposed to speculation or possibility.*" (Emphasis added.)

Mr. East relies on Dr. Lund's causation opinion in support of the compensability

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

[4] The Court notes this opinion concerns a claim for temporary total disability benefits, but finds no reason the quoted principle should not equally apply, as here, to a claim for temporary partial disability benefits.

4

of his claim. He argues that, because Dr. Lund is the authorized treating physician, the Court must afford a presumption of correctness to his causation opinion.[5] Mr. East's position is correct as far as it goes. The Court must also address Dr. Lund's causation opinion in view of Tennessee Code Annotated section 50-6-102(13)(D) (2014), which requires that a physician state a causation opinion to a reasonable degree of medical certainty. By statutory definition, a physician must state a causation opinion under a "more likely than not considering all causes" standard, as opposed to a "possibility" standard. *Id.*

The Court interprets section 50-6-102(13)(D) to require that the Court discount a causation opinion stated in terms of the "possibility" that a work injury arose primarily out of and in the course and scope of employment. Because Dr. Lund states his opinion in terms of the possibility of work-relatedness (Ex. 1 at 17), the Court gives his opinion little weight. Dr. Lund's finding of a "temporal relationship" (Ex. 1 at 4, 19-20) between Mr. East's symptoms and his work at Heritage does not sufficiently buttress his causation opinion to overcome the statutory admonition against awarding benefits based on the possibility that an alleged injury is work-related. Tenn. Code Ann. § 50-6-102(13)(D).

In consideration of the evidence in the record at this time, the Court finds that Dr. Bruce's opinion on causation is determinative. In support of this finding, the Court notes Dr. Lund expressed confidence in Dr. Bruce's credentials to treat and evaluate Mr. East, citing in his notes that he based his referral to Dr. Bruce on Dr. Bruce's "expertise in the management of suprascapular neuropathy." (Ex. 1 at 17.) The Court further notes that Dr. Bruce stated his opinion using the correct statutory standard for evaluating the work-relatedness of a medical condition where competing causative factors are involved, while Dr. Lund stated his opinion in terms of a possibility of work-relatednes. The Court also notes that, as Dr. Lund's partner, Dr. Bruce had access to the same diagnostic information as Dr. Lund to assess causation.

For the reasons outlined above, the Court accepts Dr. Bruce's opinion that Mr. East's shoulder condition did not primarily arise out of and in the course and scope of employment. Accordingly, the Court finds that, given the evidence before it, it is unlikely Mr. East will prevail in establishing his injury arose primarily out of and in the course and scope of employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. East's claim against Heritage and its workers' compensation carrier for the requested additional medical and temporary disability benefits.

2. This matter is set for an Initial (Scheduling) Hearing on January 4, 2016, at 9:00 a.

---

[5] Tenn. Code Ann. § 50-6-102(13)(E).

5

m. Eastern Time.

**ENTERED this the 16th day of October, 2015.**

_Thomas Wyatt (signature)_

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims, at 9:00 a.m., Eastern Time, on January 4, 2016. You must call 615-741-3061 or toll-free at 855-747-1721 to participate in the Initial Hearing.**

**Please Note:** <u>**You must call in on the scheduled date/time to participate.**</u> **Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Additional Medical and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 16th day of October, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|-----------|-----------|---------------|
| Brent J. McIntosh, Attorney for Sean Vance East | | | | | x | brentm@bilbolaw.com |
| Charles Poss, Attorney for Heritage Hosiery | | | | | x | Charlie.poss@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8

## APPENDIX

Exhibits:
1. Records of Chattanooga Bone and Joint Surgeons/Dr. Peter Lund;
2. Letter of April 9, 2015, from Dr. W. David Bruce, Chattanooga Bone and Joint Surgeons, to Attorney Charles Poss;
3. Heritage's personnel file on Mr. East;
4. Affidavit of Forrest Martin;
5. Recorded Statement of Sean East;
6. Wage Statements;
7. Handwritten note of David Fry;
8. Records of Physician's Care; and
9. Job Description.

Technical record:[i]
1. Petition for Benefit Determination, filed September 29, 2014;
2. Dispute Certification Notice, filed October 28, 2014;
3. Expedited Hearing Order for Medical Benefits, filed November 24, 2014; and
4. Motion for Medical Benefits, filed July 30, 2015.

---

[i] The following list contains only the filings considered in the determination of the issues raised during this Expedited Hearing. The Court did not consider a document attached to the listed filings unless it admitted the document into evidence during the Expedited Hearing. The Court considered factual statements in or attached to the listed filings as allegations unless established by the evidence.